# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**KRIS SCHEID,**

      **Plaintiff,**

        v.

**NURSE PENROSE, et al.,**

      **Defendants.**

Case No. 2:13-cv-1270
JUDGE GREGORY L. FROST
Magistrate Judge Elizabeth P. Deavers

## OPINION AND ORDER

This matter is before the Court for consideration of Defendants' motion for summary judgment (ECF No. 44), Plaintiff's memorandum in opposition (ECF No. 49), and Defendants' reply memorandum (ECF No. 54). For the reasons that follow, the Court **GRANTS** Defendants' motion in regard to Count I and **DISMISSES WITHOUT PREJUDICE** Count II.

### I.    Background

On December 30, 2012, Plaintiff, Kris Scheid, was an inmate incarcerated in Ohio's prison system at Madison Correctional Institution ("Madison"). During the morning hours that day, Plaintiff complained to a prison guard that Plaintiff was experiencing severe abdominal pain. Eventually Plaintiff was permitted to go to the infirmary, where he was examined by a nurse, Defendant Jennifer Penrose. Penrose documented Plaintiff's complaint of lower abdominal pain, hypoactive bowel sounds, pain when urinating, nausea, and vomiting, the last of which she observed. Penrose also assessed Plaintiff, taking his vital signs, which were within normal range, and performing a hands-on examination. During this examination, Plaintiff did not exhibit rebound pain, which is pain that occurs when a hand is removed from applying

pressure to the abdomen and which is an indicator of appendicitis. Plaintiff was unable to provide urine for a urine dipstick test, the results of which can indicate possible causes of abdominal issues.

Later that morning, Penrose performed an additional assessment of Plaintiff. Another nurse, Defendant Sharon Otworth, assisted Penrose. Plaintiff was complaining of pain from his bladder to his genital region, which led Otworth to inquire whether Plaintiff had any sexually transmitted diseases and to examine him for evidence of such a condition. Otworth also palpated Plaintiff's abdomen, and Plaintiff again displayed no rebound pain.

At this point, the nurses' diagnosis was that Plaintiff had a possible urinary tract infection, a stomach virus, or some other cause of his condition. Penrose then telephoned the doctor on call, Defendant Dr. Oscar Cataldi, who was not present at Madison because December 30, 2012, was a Sunday. Cataldi suspected that constipation was causing Plaintiff's symptoms and ordered the administration of an anti-nausea medication and a laxative. Cataldi also ordered that Plaintiff be kept in the infirmary for observation.

A fourth defendant, nurse Kristen Orr, was subsequently involved with Plaintiff during the second and third shifts at Madison. Orr performed an afternoon assessment of Plaintiff in which she noted that he had provided dark urine and that a successful urine dipstick test had resulted in normal results with the exception of elevated protein levels having been detected. By now, Plaintiff had had a bowel movement and had experienced pain when urinating, and he also had a fever and an elevated heart rate. Orr spoke with Cataldi by telephone. The doctor diagnosed Plaintiff as possibly having a urinary tract infection and as being dehydrated. Cataldi ordered the administration of 650 milligrams of Tylenol for Plaintiff's fever, and monitoring and

2

multiple assessments of Plaintiff continued.  Late that night, Orr again spoke with Cataldi, who again ordered the administration of anti-nausea medication and continued assessments.  Cataldi also ordered a doctor sick call for the morning.

That next morning, a doctor examined Plaintiff.  The doctor found that Plaintiff's abdomen appeared to be bloated.  He also found that Plaintiff was exhibiting rebound pain, with localized pain in his lower right quadrant.  The doctor suspected appendicitis and ordered that Plaintiff be transported to The Ohio State University Medical Center ("OSUMC").

It turns out that Penrose, Otworth, Orr, and Cataldi were wrong.  Plaintiff had a perforated appendix and underwent surgery to remove the organ.

Following surgery, Plaintiff initially received aftercare at OSUMC before he was transported to Franklin Medical Center.  There, Penrose conducted assessments of Plaintiff, but she was not involved in the placement, cleaning, or removal of his wound vacuum, a device that draws fluid out of the surgical wound to promote healing.  Plaintiff's records indicate that Penrose had not found any signs or symptoms of infection during any of her assessments.  Eventually, Plaintiff was transported back to Madison, where Cataldi examined him.  Cataldi initially adhered to the treatment plan from Franklin Medical Center in which Plaintiff's wound was cleaned and the dressing changed three times a week.  In late February, Cataldi ordered that the dressing be changed every evening.  There were still no signs or symptoms of an infection.  Finally, in his last interaction with any defendant, Plaintiff was assessed by Orr in the Madison infirmary in early March 2013.  As part of that assessment, Orr noted drainage from Plaintiff's wound, with a hint of green to the drainage and no odor.

On December 27, 2013, Plaintiff filed the instant action, asserting a deliberate

3

indifference claim under 42 U.S.C. § 1983 (Count I) and a medical negligence claim under state law (Count II). (ECF No. 1.) The defendants named in the Complaint, Penrose, Otworth, Orr, and Cataldi, have filed a motion for summary judgment. (ECF No. 44.) The parties have completed briefing on the motion, which is ripe for disposition.

## II. Discussion

### A. Standard Involved

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Prods., Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, which must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided

4

that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

### B. Analysis

#### 1. *Federal claim*

As noted, Plaintiff asserts a deliberate indifference claim against Defendants in Count I. The Sixth Circuit has explained that " '[d]eliberate indifference' by prison officials to an inmate's serious medical needs constitutes 'unnecessary and wanton infliction of pain' in violation of the Eight[h] Amendment's prohibition against cruel and unusual punishment." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (quoting *Estelle v. Gamble*, 492 U.S. 97, 104 (1976)). Such a violation presents a claim under 42 U.S.C. § 1983. *Id.*

In addressing such claims, courts apply a mixed objective and subjective standard, which the United States Supreme Court has explained as follows:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Miller*, 408 F.3d at 812 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). Each component of the applicable test carries with it specific requirements.

Under the objective part of the test, a plaintiff must show the existence of a "sufficiently serious" medical need. This requires the plaintiff to show "that he or she 'is incarcerated under conditions imposing a substantial risk of serious harm.' " *Id.* (quoting *Farmer*, 511 U.S. at 834).

5

There is no dispute here over whether Plaintiff's appendicitis constitutes a sufficiently serious medical need. Defendants concede the point. (ECF No. 44, at Page ID # 300.)

Under the subjective part of the test, a plaintiff must show that the prison official possessed 'a sufficiently culpable state of mind in denying medical care.' " *Id.* at 813 (quoting *Farmer*, 511 U.S. at 834). This requires the plaintiff to show "a degree of culpability greater than mere negligence, but less than 'acts or omissions for the very purpose of causing harm or with knowledge that harm will result.' " *Id.* (quoting *Farmer*, 511 U.S. at 835). The Sixth Circuit has explained the requisite culpability as follows:

> The Supreme Court has defined deliberate indifference as "lying somewhere between the poles of negligence at one end and purpose or knowledge at the other" and it is "routinely equated . . . with recklessness." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970. Acting or failing to act "with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* "In other words, a plaintiff 'does not need to show that the [defendant] acted with the very purpose of causing harm or with knowledge that harm will result.' " *Bonner–Turner v. City of Ecorse*, No. 14–2337, ––– Fed.Appx. ––––, ––––, 2015 WL 5332465, at *6 (6th Cir. Sept. 14, 2015) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 541 (6th Cir. 2008)). The standard satisfies the "twin goals" of being high enough not to equate to mere negligence, but low enough so that a plaintiff can avoid summary judgment in favor of the defendant without having to prove her entire case. *Id.*

*Shadrick v. Hopkins Cty., Ky.*, 805 F.3d 724, 737-38 (6th Cir. 2015).

Finally, the Sixth Circuit has explained that even in light of the mixed objective and subjective standard, " 'less flagrant conduct may also constitute deliberate indifference in medical mistreatment cases.' " *Miller*, 408 F.3d at 819 (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2001)). Thus, "a doctor's provision of 'grossly inadequate medical care' to an involuntary detainee may amount to deliberate indifference." *Id.*

6

(quoting *Terrance*, 286 F.3d at 844). *See also Shadrick*, 805 F.3d at 744. This is a "relaxed standard for deliberate indifference" that pertains to medical claims. *Miller*, 408 F.3d at 820.

Amidst this context, Defendants raise a defense that arguably makes sense only in the law: *we evade liability because, at most, we were negligent, but not sufficiently incompetent, so that we did nothing wrong under the deliberate indifference standard.* Phrased more kindly, Defendants argue that there is no evidence that they were subjectively aware that Plaintiff was suffering from appendicitis or that the medical care they provided was so inadequate so as to amount to no care at all. In fact, Defendants argue, although they missed the inference that Plaintiff's symptoms pointed to appendicitis, they were actively attempting to diagnose and assist Plaintiff during the events involved. Thus, Plaintiffs conclude, they cannot be said to have been deliberately indifferent to Plaintiff's condition.

This Court agrees with Defendants because Plaintiff has failed to point to any evidence that even suggests that Defendants actually drew the requisite inference or provided grossly inadequate medical care. As mentioned above, Plaintiff must show more than mere negligence to satisfy the subjective component of the deliberate indifference standard. *Miller*, 408 F.3d at 813. In other words, Plaintiff must show that a defendant had a state of mind evincing 'deliberateness tantamount to intent to punish.' " *Id.* (quoting *Horn v. Madison Cnty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). This means, the Sixth Circuit has explained, that " '[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.' " *Id.* (quoting *Horn*, 22 F.3d at 660). The end result is that " 'an official's failure to alleviate a significant risk that he should

7

have perceived but did not, while no cause for commendation, cannot under [caselaw] be condemned as the infliction of punishment.' " *Id.* (quoting *Farmer*, 511 U.S. at 838).

Here, there is no evidence that Defendants knew or had drawn the inference that Plaintiff had appendicitis. Contrary to much of Plaintiff's briefing, what matters is what Defendants knew and did and not what transpired outside Defendants' realm of knowledge. This relevant evidence indicates that Penrose was the nurse who first treated Plaintiff upon his arrival at the infirmary. She examined Plaintiff and found no evidence of rebound pain when she palpated Plaintiff's abdomen, which would have pointed to appendicitis. Penrose later conveyed Plaintiff's symptoms and her findings to the doctor on call. This resulted in Plaintiff being treated with an anti-nausea medication and a laxative because the diagnosis was that he was suffering from constipation. There is no evidence suggesting that although the first diagnosis was incorrect, the diagnosis and treatment were not part of a reasoned and good-faith effort to treat Plaintiff's symptoms. *See Shade v. City of Middletown, Ohio*, 200 F. App'x 566, 570 (6th Cir. 2006) (no deliberate indifference where a reasoned and good-faith effort to treat an inmate's symptoms involved an ultimately incorrect diagnosis).

Otworth, another nurse, was involved in the second assessment of Plaintiff on December 30, 2012. At that assessment, the medical records indicate that Plaintiff was complaining of pain in his bladder and genital region. Similar to Penrose's experience, Plaintiff reported no rebound pain when Otworth palpated Plaintiff's abdomen. Otworth inquired whether Plaintiff had any sexually transmitted diseases, which he denied. She then examined his scrotum, noting a slightly enlarged right testicle, significant odor, and the absence of blisters, sores, or discharge. All of

8

this may have been embarrassing for Plaintiff, whose essentially asserts that Otworth was rude. She denies the accusation, but her bedside manner does not ultimately matter because the relevant point is that she was attempting to ascertain the cause of Plaintiff's symptoms, regardless of whether she embarrassed him and regardless of who else was present for the examination.  The deliberate indifference standard is not a civility code.  It is a test by which behavior is measured to ascertain whether reckless disregard for serious harm exists, and these facts do not weigh in Plaintiff's favor.

Orr is the nurse who treated Plaintiff during the second and third shifts at the infirmary. During this time, she repeatedly assessed Plaintiff, spoke with Cataldi about Plaintiff, and administered medication to Plaintiff as ordered.  She is therefore akin to the nurse in *Shade* who "did not callously ignore the serious medical condition from which [the inmate] was suffering" and "[i]nstead . . . closely monitored that condition and took reasonable steps to address the outward manifestations of the illness." *Id.* at 570.  Later, when Plaintiff returned to Madison from the Franklin Medical Center for aftercare, Orr saw Plaintiff once.  She assessed him and changed the dressing on his surgical wound.  Such minimal contact, which still constitutes the provision of care, cannot logically be said to present deliberate indifference to Plaintiff's serious medical needs and the healing of his wound.

Cataldi, the doctor responsible for Plaintiff, also was not deliberately indifferent.  Cataldi initially ordered treatment for nausea and constipation based on Plaintiff's symptoms considered against stable vital signs and no rebound pain.  Cataldi also ordered that Plaintiff be kept for observation.  Later, in considering Plaintiff's pain and the color of Plaintiff's urine, Cataldi

9

thought Plaintiff was dehydrated and possibly had a urinary tract infection. When Plaintiff failed to improve, Cataldi ordered that he be examined by a doctor in the morning. It was only at that later evaluation that Plaintiff presented rebound pain in his abdomen, and the presence of that additional symptom led the second doctor to order that Plaintiff be transported to the hospital. Later, following Plaintiff's surgery, Cataldi was simply not involved in Plaintiff's aftercare until he ordered that Plaintiff's wound dressing be changed daily. All of this leads to two points.

First, the fact that Cataldi diagnosed Plaintiff and proscribed treatment without actually examining Plaintiff, but only by communicating with medical personnel over the phone, does not demonstrate deliberate indifference. In *Miller*, the Sixth Circuit addressed a deliberate indifference claim asserted against a doctor who over the phone listened to a recitation of facts from the prison's personnel and made a medical judgment regarding treatment. 408 F.3d at 818-19. The court of appeals affirmed a grant of summary judgment in favor of the doctor without weighing the telephonic communication adversely; there, as here, it was the substance of the communication and the circumstances surrounding the doctor's decision making that mattered. Although in both cases the doctors involved could not recall the precise details of what they were told on the telephone, there is no evidence in either case that the doctor was made aware of information that he then recklessly disregarded.

Second, Cataldi's actions are at worst, if at all, negligent. He was ultimately incorrect in the treatment and diagnosis he provided Plaintiff, but in light of the broad symptoms that Plaintiff was presenting and the lack of specific indicators of appendicitis, such as rebound pain, there are no facts from which a reasonable juror could conclude that Cataldi inferred and then

10

disregarded a known risk. Cataldi did not violate Plaintiff's constitutional rights, even if he did not ably treat his patient.

The foregoing summary presents the controlling point: there were certainly some signs that were consistent with appendicitis, but because the evidence indicates that these signs are also common in individuals presenting with various gastro-intestinal disorders, Defendants initially missed the correct diagnosis and consequently the correct course of action. This is not deliberate indifference; it is ineffectiveness arising, perhaps at worst, from drawing incorrect inferences. *See Miller*, 408 F.3d at 821 ("In this Circuit, it is established that '[k]nowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference.' " (quoting *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 896 (6th Cir. 2004))). Given the instant facts, this is not a case in which prison medical personnel actually drew the inference of a substantial risk of serious harm and recklessly disregarded it, as in *Shadrick*, 805 F.3d at 744. Rather, this is a case in which Defendants tried and for a time failed to diagnose and treat Plaintiff correctly.

This leaves the issue of whether any defendant provided Plaintiff with grossly inadequate medical care. The Sixth Circuit has explained that "grossly inadequate medical care" means "medical care that is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' " *Miller*, 408 F.3d at 819 (quoting *Terrance*, 286 F.3d at 844). None of Defendants' actions fall to this level. Defendants may have been negligent, they may have been less than fully competent, and they may have been inconsiderate, but they were not grossly incompetent. Defendants tried to treat Plaintiff correctly

11

and failed. Although it was only when Plaintiff exhibited more appendicitis-specific symptoms that he was diagnosed correctly, this does not mean that Defendants failed sufficiently so as to present § 1983 liability.

Nor does the fact that others, including Plaintiff, may have suspected appendicitis before the Madison medical team preclude summary judgment today. The parties disagree over whether Plaintiff told the nurses that he thought he had appendicitis, but even assuming arguendo that he did make the statement, it is still a subjective self-evaluation qualified by the results of the assessments conducted on Plaintiff. In other words, if Plaintiff did tell the nurses his suspicion, Defendants were not reckless in failing to credit that evaluation promptly. It would have perhaps pointed them in the correct direction, but the facts did not necessarily support the possibility. This ultimately *at most* points to negligent practice. It may be embarrassing for Defendants that they missed the correct diagnosis while laypersons allegedly suspected it, but the fact that objective medical data obtained during assessments pointed to other equally plausible conditions prohibits recognizing a constitutional violation under these circumstances.

The evidence indicates that Defendants were not deliberately indifferent to Plaintiff's medical needs, even though Plaintiff disagreed with the diagnosis and treatment he first received and even though the initial diagnosis and treatment were ultimately incorrect. *See Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001). There is also no evidence of poor treatment by Defendants following Plaintiff's appendectomy, including post-surgery wound care. To proceed, Plaintiff must show that any defendant had knowledge of facts about Plaintiff from which that defendant could draw the inference that the diagnosis and course of treatment employed

12

presented a substantial risk of serious harm to Plaintiff and that the defendant actually drew the inference persisted in the course of treatment anyway. *See McKee v. Turner*, 124 F.3d 198, 1997 WL 525680, at *5 (6th Cir. 1997) (unpublished table decision). Even resolving all inferences in Plaintiff's favor, this Court concludes that he has failed to meet his burden. Consequently, Defendants are entitled to summary judgment on Plaintiff's Count I federal claim.[1]

### 2. *State law claim*

Plaintiff also asserts a state law claim for medical negligence in Count II. Defendants argue that because negligence claims are not cognizable in a § 1983 action, this second claim should be "ignored." (ECF No. 44, at Page ID # 308.) A medical malpractice claim is not cognizable under § 1983, *Palmer v. Ohio State Univ.*, 47 F. App'x 724, 726 (6th Cir. 2002), but this is not the same thing as barring such a claim from the lawsuit entirely. Rather, in light of the failure of the Count I federal claim, the better appropriate course is for this Court to recognize the presumption that it should not address the Count II state law claim. *See Jackson v. Heh*, 215 F.3d 1326, 2000 WL 761807, at *8 (6th Cir. 2000) (unpublished table decision) (referencing 28 U.S.C. § 1367 and stating that " [w]here, as here, a federal court has properly dismissed a

---

[1] Defendants also assert in their briefing that they are also entitled to summary judgment based on qualified immunity. This doctrine operates under certain circumstances to shield from civil liability governmental officials who are performing official duties so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Sinick v. Summit*, 76 F. App'x 675, 679 (6th Cir. 2003); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The applicable analysis involves determining "whether, considering the allegations in a light most favorable to the injured party, a constitutional right has been violated" and "whether that right was clearly established" at the time of the incident in question. *Campbell v. City of Springboro, Ohio*, 700 F.3d 779, 786 (6th Cir. 2012) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001)); *Simmonds v. Genesee Cnty.*, 682 F.3d 438, 443–44 (6th Cir. 2012). Given the analysis presented addressing Count I, it is apparent that no constitutional violation occurred here.

plaintiff's federal claims, there is a 'strong presumption' in favor of dismissing any remaining state claims unless the plaintiff can establish an alternate basis for federal jurisdiction." (citing *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996))).

Here, Plaintiff has failed to assert any justification or alternative basis for exercising jurisdiction over the remaining state law claim should his federal claim fail. Thus, while expressing no opinion on the merits of the state law claim, the Court dismisses Count II without prejudice. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966) ("If the federal claims are dismissed before trial . . . the state claims should be dismissed as well."); *Brandenburg v. Housing Auth. of Irvine*, 253 F.3d 891, 900 (6th Cir. 2001) ("the usual course is for the district court to dismiss the state-law claims without prejudice if all federal claims are disposed of on summary judgment").

### III. Conclusion

The Court **GRANTS** Defendants' motion for summary judgment in regard to Count I. (ECF No. 44.) This Court also declines to exercise supplemental jurisdiction over the Count II state law claim, which the Court **DISMISSES WITHOUT PREJUDICE**. The Clerk shall enter judgment accordingly and terminate this case on the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

                                                /s/ Gregory L. Frost
                                              GREGORY L. FROST
                                              UNITED STATES DISTRICT JUDGE